IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PAUL R. CHAPLIN, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.  4:22-cv-01148-P |
| HCL AMERICA, INC., | § § § | |
| Defendant. | § § | |

**FIRST AMENDED PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Paul R. Chaplin (hereinafter referred to as "Plaintiff") complaining of HCL America, Inc. (hereinafter referred to as "Defendant"), and for cause of action shows unto the Court the following:

**I.
PARTIES**

1. Plaintiff, Paul R. Chaplin, is an individual residing in the State of Texas whose address is 329 Willow Vista Drive, Saginaw, Texas 76179.

2. Defendant HCL America, Inc. is foreign corporation duly organized and existing under the laws of the State of California, and authorized to do business in the State of Texas, with its principal place of business located at 330 Potrero Avenue, Sunnyvale, California 94085. HCL America, Inc. may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporated, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## II.
## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court because this case has federal question jurisdiction over civil rights matters under 28 U.S.C. §§ 1441, 1443, and 1446. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964.

4. Venue lies in the Northern District of Texas, Fort Worth Division, under 28 U.S.C. §§ 1441(a) and 1446(a) because Plaintiff filed the State Court Action in this judicial district and division.

## III.
## FACTS

5. Plaintiff is a fifty-two (52) year old male.

6. Plaintiff has a documented disability of a genetic neurological disorder.

7. Plaintiff was employed by Defendant as a level II technician for over six (6) years with a start date of March 23, 2016. Throughout Plaintiff's tenure with Defendant, he was not written up, reprimanded, or admonished, instead often asked to complete special projects, train new hires, and was often rewarded for high ticket production. Plaintiff was also known to volunteer to work on skeleton crews during holidays.

8. After the pandemic made remote shifts in staff obligations, Plaintiff was involuntarily moved to a different position on the 1.5 team as a representative at the call center help desk based out of his own home. This call center had a different structure than Plaintiff's previous position. Plaintiff was approximately 1 of 8 representatives involuntarily forced to this new position. Of these representatives, most were older with more tenure, experience, and higher pay.

9. In or around March 2021, Plaintiff's manager Thiliph Kumar pulled him into a special meeting to tell him that he was going to begin receiving higher compensation due to his good

employee standing. According to Thiliph Kumar, only a few select employees were receiving this raise and Plaintiff would just need to wait a bit to start receiving his. Plaintiff <u>never</u> received such promised raise. After following up many times with management, Plaintiff was eventually told by Thiliph Kumar that he would not be receiving the pay raise because she had too much tenure and was already making too much money. This was a benefit only to be received by younger, less tenured employees. The only people who received a bonus were under the age of forty (40).

10. During this period, Plaintiff's team lead Eva Gruszecki would ask Plaintiff to train new hires and to "clean up the bucket of tickets" by being in Aux 6 on the schedule. Plaintiff would sometimes receive rewards for his performance in these tasks. At one point, Plaintiff explained to Eva Gruszecki that his manager had effectively gone missing, was completely unresponsive, and that Plaintiff now had no one to discuss problems with on tickets on this account.

11. After this discussion, Eva Gruszecki's and new manager Nathan Clussman's behavior toward Plaintiff shifted negatively. Eva Gruszecki suddenly started complaining that Plaintiff needed to perform better although he had no previous complaints about his performance. Nathan Clussman began to give Plaintiff a hard time about his ticket metrics and would not allow Plaintiff to return to Defendant's Plano location that was short a technician and specifically requested Plaintiff's return, even though Nathan Clussman had previously okayed that return to Plano. Plaintiff was told that he wasn't good enough to go back to the physical office. However, during this time Defendant is not complaining about Plaintiff's performance. In addition, Nathan Clussman began to single out Plaintiff about writing him up for the level 1.5 team or pointing out instances where Plaintiff could be disciplined. Nathan Clussman would not do this in private, but in front of the entire team.

12. Since the work environment was becoming hostile, on or about June 4, 2021 Plaintiff reached out to Defendant's human resources department. Human resources representative Susan

Lackey ignored his concerns, including not receiving his scheduled coaching calls, his managers disappearing and unavailable for assistance, not being given a performance review, not being properly compensated, and the hostile work environment. Susan Lackey did not investigate any of Plaintiff's allegations. Susan Lackey even refused to provide Plaintiff with his own personnel file. She just told Plaintiff to seek out a different manager.

13. Since Susan Lackey would not do anything to address any of Plaintiff's concerns, Plaintiff elevated his complaints to upper management Vikas Bali. Plaintiff told Vikas Bali about all the concerns he had expressed to human resources. Plaintiff also informed Vikas Bali that that he had rumblings that Thiliph Kumar had been falsifying 1-1295 documents and suspected other illegal activity was taking place and asked him for Defendant's ethics phone number. Vikas Bali said he would look into all of it. Suddenly Vikas Bali reassigned Plaintiff to a new manager, Kayson Palmer. Kayson Palmer immediately started giving Plaintiff a hard time at work. Always on the phone, never in writing.

14. On or about August 3, 2021, Plaintiff was required to take a leave of absence from Defendant to deal with an episode of symptoms from his diagnosed disability. The increased stress at work was not helping his health.

15. On or about December 1, 2021, Plaintiff submitted an Americans with Disabilities Act (hereinafter referred to as "ADA") Accommodation Request to Defendant's scheduled Amanda Blakely in order to return to work. The request completed by Plaintiff's physician included Plaintiff's requirement for additional breaks. Due to his disability, Plaintiff would periodically need longer breaks so the recommendation was for two breaks in the morning and two breaks in the afternoon.

16. On or about December 6, 2021, Plaintiff returned to work. On that day, Plaintiff's supervisor Kayson Palmer denied Plaintiff's ADA Accommodation Request and told Plaintiff that

Defendant can't handle that accommodations because that would mean too many people off the phone. Plaintiff was forced to continue under the regular, given schedule. Defendant did not offer any other accommodations. In fact, Defendant affirmatively told Plaintiff that they did not have to make accommodations for him.

17. After his return, Kayson Palmer told Plaintiff that his work was suffering. Yet at the same time Kayson Palmer would tell Plaintiff not to take tickets out of the bucket which would have the intentional result of Plaintiff not having enough ticket volume. Plaintiff was never put on a performance improvement plan. Kayson Palmer then insisted Plaintiff undergo additional training. Kayson Palmer just kept adding work to Plaintiff's to make his work life unbearable.

18. Even after Kayson Palmer would permit Plaintiff to attend a few doctor's appointments in December 2021, scheduler Amanda would continue to document Plaintiff's timecards with "unapproved PTO." Plaintiff's time would also be changed if he asked for extra breaks or time.

19. Plaintiff's disability would not allow him to continue the regular schedule without any sort of accommodations, so Plaintiff was forced to resign on December 30, 2021. Defendant failed to pay Plaintiff's last paycheck in a timely fashion and Plaintiff was forced to involve the Texas Workforce Commission.

## IV.
## AGE DISCRIMINATION IN
## EMPLOYMENT ACT ("ADEA") VIOLATION

20. Plaintiff incorporates all preceding paragraphs herein.

21. Age Discrimination in Employment Act of 1967., 81 Stat. 602, states: "it shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of age." *See also* Tex. Lab. Code § 21.051.

22. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

23. Within this general framework, the specifics to establish a prima facie case are outlined in the four-point *McDonnell* test. In *McDonnell*, the Court established a four-point test by which a plaintiff can show a prima facie case of discrimination. The plaintiff must show that: (1) the plaintiff belongs to a class protected by Title VII; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

24. With respect to the first requirement, under ADEA, discrimination based on age is prohibited. During all relevant times of this discrimination, Plaintiff was well over forty (40) years old which falls within a protected class.

25. As to the second requirement, throughout Plaintiff's tenure with Defendant, he was not written up, reprimanded, or admonished. In fact Plaintiff was so good at his job that he was asked to take on special projects and even train new hires. Thus, it is apparent that Plaintiff was qualified for his position.

26. Despite being qualified, Plaintiff received adverse employment action. Despite his work performance history and never having received a reprimand or other disciplinary action during his tenure with Defendant, Plaintiff was told he qualified for and would be given a raise but then did not receive that raise. Simultaneously every single person that also qualified for AND received that raise was under the age of forty (40). Plaintiff was directly damaged as a result because he was denied additional pay for which he was promised but subsequently never received.

27. Defendant has yet to provide a legitimate reason for the refusal to grant Plaintiff the pay and title for which he was promised but later denied but were so eager to provide to Plaintiff's younger colleagues.

## V.
## TITLE VII VIOLATION FOR
## DISCRIMINATION BASED ON DISABILITY

30. Plaintiff incorporates all preceding paragraphs herein.

31. Disability discrimination occurs when an employer or entity covered by the American with Disabilities Act ("ADA") treats a qualified individual who is an employee unfavorably because he has a disability. To state a claim for disability discrimination under the ADA, a plaintiff must show: "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

32. A disability is "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (quoting 29 C.F.R. § 1630.2(g)). Although having a substantially limiting impairment "is not meant to be a demanding standard[,] . . . not every impairment will constitute a disability within the meaning of [the ADA]." 29 C.F.R. §1630.2(j)(1)(ii). Indeed, even under the 2008 amendments to the ADA, a physical or mental impairment is a disability only if it "'substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'" *Estes v. Town*, 2018 WL 1157787, *2 (N.D. Tex. Feb. 7, 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)) (emphasis added); *Walter v. Birdville Indep. Sch. Dist.*, 2018 WL 3974714, *3 (N.D. Tex. Aug. 20, 2018) (same); *Williams v. City of Richardson*, 2017 WL 4404461, *7 (N.D. Tex. Sept. 8, 2017) (same), *report and recommendation adopted*, WL 4351535 (N.D. Tex. Sept. 30, 2017).

33. In order to state a claim for disability discrimination under the ADA, a plaintiff must demonstrate "that (a) he has a disability; (b) he is a qualified individual for the job in question; and (c) an adverse employment decision was made because of his disability." *Zenor v. El Paso Healthcare Sys.,* Ltd., 176 F.3d 847, 853 (5th Cir. 1999); *Mercer v. Arbor E & T*, No. 4:11–CV–3600, 2012 WL 1425133, at *5 (S.D.Tex. Apr.21, 2012) (quoting *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir.1999)) (internal quotation marks omitted); *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763 (5th Cir.1996); *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004); *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

34. With respect to the first requirement, Plaintiff has a diagnosed neurological disability, verifying documentation was submitted to Defendant for Plaintiff's FMLA request that was approved, and thus Plaintiff is a member of a protected class based on his disability.

35. Plaintiff was hired by Defendant in 2016 and throughout his tenure with Defendant, prior to his return from FMLA leave, he was not written up, reprimanded, or admonished. In fact Plaintiff was so good at his job that he was asked to take on special projects and even train new hires. Even after his return from FMLA leave and Defendant attempted to write up Plaintiff, he was never put on a performance improvement plan nor did they put him on any sort of coaching plan. Thus, it is apparent that Plaintiff was qualified for his position.

36. Also as previously stated, despite being qualified Plaintiff received adverse employment action from Defendant. Despite his work performance history and never having received a formal reprimand or other disciplinary action during his tenure with Defendant, Plaintiff was denied any accommodations for his neurological disorder. In fact, Plaintiff's supervisor told him that Defendant was not required to provide him with accommodations. The main accommodation requested was merely a few extra breaks. After rejected that accommodation, Defendant failed to provide any other accommodations. Even though Kayson Palmer has asserted that he did give Plaintiff time off, PTO, for doctor's appointments, the time records clearly show that when Plaintiff went to doctor's appointments Defendant marked the time on his time card as "unapproved PTO." That is not an accommodation. Further, Defendant now began to complain about Plaintiff's work performance but did not feel the need to substantiate such concerns with a performance improvement plan or other help for Plaintiff. Instead, Kayson Palmer just complained that Plaintiff's volume wasn't high enough, even though Kayson Palmer specifically prohibited Plaintiff from taking tickets out of the bucket which would prevent Plaintiff from getting the proper

volume required. He was directly damaged as a result because he was forced to work without the accommodations, support, or healthy environment necessary for Plaintiff to be successful.

37. Defendant has yet to provide a legitimate reason for the refusal to grant Plaintiff's simple accommodation request or other adverse employment actions. Defendant's actions clearly demonstrate discriminatory conduct toward Plaintiff because of his disability. They refused to accommodate so they could force him to quit and then bring in someone younger, less expensive, and without a disability to take his place.

## VI.

## TITLE VII VIOLATION FOR RETALIATION

38. Plaintiff incorporates all preceding paragraphs herein.

39. Title VII of the Civil Rights Act of 1964 (the "Act") prohibits retaliation against an employee who reports discrimination based on disability. It is unlawful to retaliate against applicants or employees for communicating with a supervisor or manager about employment discrimination, including harassment. Retaliation can take the form of a reprimand; giving a performance evaluation that is lower than it should be; engaging in physical or verbal abuse; increased scrutiny; and making the employee's work more difficult.

40. A plaintiff establishes a claim for retaliation when [s]he, "engaged in an activity protected by Title VII; 2) was subjected to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019)(quoting *Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a);

*Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

41. Plaintiff engaged in a Title VII protected activity when he began to file complaints with Defendant's human resources department and management about the refusal to honor the promised pay raise, the potentially illegal activities taking place, and the increased scrutiny creating a hostile work environment.

42. As stated previously, Plaintiff suffered adverse employment action when he was denied the pay raise he had been promised and the hostile work environment continued to such a degree that Plaintiff had no choice but to resign for his health.

43. A causal link exists between Plaintiff's reports to Defendant's human resources department and management regarding the refusal to honor the promised pay raise, the potentially illegal activities taking place, and the increased scrutiny creating a hostile work environment and the worsening of management's behavior toward Plaintiff. Plaintiff was so qualified for his position that he was even asked to take on special projects and train new hires. There was no problem with Plaintiff or his work performance until Plaintiff expressed his concerns to management and human resources. Almost all at once Plaintiff was under more intense scrutiny and being singled out. When he finally needed to request accommodations for his disability, the retaliation became worse, and his management began to write him up for "unapproved PTO" for going to doctor's appointments when he had already verbally authorized Plaintiff to take such time. He also complained about Plaintiff's work performance but then intentionally prevented Plaintiff from making progress and even failed to put together a performance improvement plan. The behavior continued to worsen until Plaintiff was constructively terminated when his health could take no more and he had to resign.

44. Defendant's actions clearly demonstrate retaliation against Plaintiff for filing complaints with Defendant's human resources department and management.

## VII.
## HOSTILE WORK ENVIRONMENT

45. Plaintiff incorporates all preceding paragraphs herein.

46. A plaintiff establishes a claim for hostile work environment under Title VII when he pleads facts that an inference can be drawn that he was subjected to unwelcome harassment because of his protected activity; that the harassment "complained of affected a term, condition, or privilege of employment and that the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Johnson v. VT Halter Marine, Inc.*, 820 Fed. App'x 283 (5th Cir. 2020)(quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)).

47. As stated above, Plaintiff engaged in a Title VII protected activity when he began to file complaints and report behavior with Defendant's human resources department and management about the refusal to honor the promised pay raise, the potentially illegal activities taking place, and the increased scrutiny creating a hostile work environment. After making such complaints and reporting such behavior, Plaintiff began to suffer increased scrutiny, was denied any reasonable accommodation for his disability and was now the subject of the purported work performance complaints but was not provided guidance or direction for improvement.

48. Plaintiff reports to human resources and management went unanswered. There was no investigation. No one followed up with Plaintiff for more information or to determine if there had been any improvement to his situation. No one provided clarification to clear up any of the issues. The only result was that Plaintiff was now on Defendant's radar and his every action was scrutinized and met with resistance or negative reaction. Defendant's actions clearly demonstrate

that they knew Plaintiff was suffering under a hostile work environment and they failed to take any remedial action.

## VIII.
## RESPONDEAT SUPERIOR AND RATIFICATION

49. Whenever in this complaint it is alleged that the Defendant, HCL America, did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## IX.
## CONDITIONS PRECEDENT

50. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Petition is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## X.
## DAMAGES

32. Plaintiff sustained the following damages as a result of the actions of Defendant described hereinabove:

    a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b. All reasonable and necessary costs incurred in pursuit of this suit;

    c. Emotional pain and humiliation;

    d. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    e.   Inconvenience;

    f.   Interest;

    g.   Loss of benefits; and

    h.   Interest.

## XI.
## ATTORNEY'S FEES

32. Plaintiff engaged Ali Crocker Russell of Crocker Russell & Associates to prepare and prosecute this lawsuit. As part of the petition, Plaintiff petition this Court to render judgment for reasonable attorneys' fees, expenses, and costs through trial and appeal in his favor and against Defendant and order the judgment to be paid directly to Ali Crocker Russell. Ali Crocker Russell petitions this Court to award post-judgment interest as permitted by law.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

        Respectfully submitted,

        /s/ Ali Crocker Russell
        Ali Crocker Russell
        State Bar No.: 24098868

        CROCKER RUSSELL & ASSOCIATES

>2401 Callender Road, Suite 103
>Mansfield, Texas 76063
>Tel: (817) 482-6570
>Fax: (682) 232-1850
>Ali@cralawfirm.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

On January 3, 2023, I electronically submitted the forgoing instrument with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule Civil Procedure 5(b)(2).

>/s/ Ali Crocker Russell
>Ali Crocker Russell