UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**PAUL R. CHAPLIN,**

   Plaintiff,

v.                                             No. 4:22-cv-01148-P

**HCL AMERICA, INC.,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 11. Having considered the briefing and evidence of record, the Court concludes the Motion should be and hereby is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Paul Chaplin is fifty-two and suffers from post-traumatic stress disorder ("PTSD") and essential tremor. Chaplin worked for Defendant HCL American from March 2016 until his resignation in December 2021. Two months after Chaplin resigned from HCL, he filed a discrimination charge with the EEOC, alleging age discrimination under the Age Discrimination in Employment Act ("ADEA") and disability discrimination under the Americans with Disabilities Act ("ADA"). Chaplin says HCL denied him a raise available to younger employees and failed to accommodate his disability. He also says HCL created a hostile work environment and retaliated against him for filing workplace grievances. After receiving a right-to-sue letter from the EEOC, Chaplin sued HCL in the 48th District Court of Tarrant County, Texas. HCL removed his case to this Court on December 27, 2022.

At the Court's request, Chaplin filed an amended complaint on January 3, 2023. The amended complaint alleges counts of age discrimination under the ADEA, disability discrimination under the

ADA, and retaliation/hostile work environment under Title VII. HCL moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

HCL seeks summary judgment on all claims. HCL attacks the procedural propriety—*e.g.*, administrative exhaustion—of Chaplin's Title VII and ADEA claims and the substantive merits of Chaplin's ADA claim. The Court addresses HCL's procedural attacks first.

### A. Summary judgment is improper for Chaplin's Title VII and ADEA claims.

As noted above, HCL doesn't contest the merits of Chaplin's Title VII or ADEA claims. Rather, HCL observes that "Plaintiff does not so much

2

as mention the words 'Title VII,' 'hostile work environment,' 'retaliation,' 'pay,' or 'pay raise' anywhere in his EEOC charge." ECF No. 12 at 15. "As a result," argues HCL, "Plaintiff's newly asserted Title VII hostile work environment and retaliation claims and his newly asserted ADEA claim based on pay are barred as a matter of law." *Id.* As explained below, the Court disagrees.

       1.   <u>Chaplin's Title VII claims grew from the EEOC charge.</u>

HCL says Chaplin's Title VII claim is "barred as a matter of law" because Chaplin never used the words "Title VII" in the EEOC charge. *See* ECF No. 12 at 15. This argument adopts a "magic words" approach the Court has long eschewed. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) (noting the Court looks to claims that "can reasonably be expected to grow out of the charge of discrimination"). To endorse this position would undermine policy considerations at the heart of Title VII, which "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." *Id.* at 465. Moreover, Chaplin filed his initial charge pro se, warranting even further interpretive leniency from the Court. *See Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) ("[B]ecause most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally."). The Court thus declines to sift the initial charge for correct incantations and instead looks to the substance of Chaplin's claims before the EEOC.

Looking to the initial charge alone, no amount of liberal construction can manufacture a cognizable Title VII claim. The charge recites allegations that HCL failed to accommodate Chaplin's disability and ends by stating: "I believe that I was discriminated against based on my disability, in violation of the [ADA]. I believe that I was discriminated against because of my age (52), in violation of the [ADEA]." *See* ECF No. 13-1 at 2. That won't cut it. Mindful that the "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC," *see Pacheco*, 448 F.3d at 788–89, the Court cannot read a live claim into a charge that didn't provide HCL with fair notice of Chaplin's claims. In this regard, HCL is correct that "[a]n employment discrimination plaintiff may not succeed on claims in his subsequent

3

lawsuit unless they are 'like or related' to the claims in his underlying EEOC charge." ECF No. 12 at 13–14 (citing *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)).

But this Court has long recognized that judicial inquiry isn't constrained to the four corners of an EEOC charge. *Fellows v. Univ. Restaurants, Inc.*, 701 F.2d 447, 448 (5th Cir. 1983) (looking beyond initial EEOC charge to entire resulting investigation); *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheco*, 448 F.3d at 789) ("To balance [conflicting] considerations, 'this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself.'"); *Pacheco*, 448 F.3d at 789 ("We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label."). Constrained to the initial charge, the Court agrees with the Response that "the language contained therein leaves something to be desired." ECF No. 16 at 8. But things change when the Court looks beyond the initial charge to the Parties' position statements—filings each submitted to agency investigators. Chaplin's position statement details several examples whereby HCL "start[ed] to make Mr. Chaplin's work life 'hostile' and difficult for Mr. Chaplin." ECF No. 17 at 62. The statement suggests HCL had a retaliatory motive for doing so, as it alleges HCL supervisors gave Chaplin a "hard time" once they "found out [he] was making noise about [workplace issues]." *Id.* The statement even attributes Chaplin's resignation to these issues, stating "Mr. Chaplin had absolutely no resolutions to his ongoing, multiple problems, which included scheduling issues with no accommodations, constant age discrimination, *being bullied at work and in a very 'hostile' work environment*." *Id.* at 61 (emphasis added).

The Court should broadly construe "the scope of the investigation that could reasonably be expected to grow out of [Chaplin's] EEOC charges." *See Jennings v. Towers Watson*, 11 F.4th 335, 341 (5th Cir. 2021). It requires little interpretive breadth to imagine an investigation into the above claims would implicate Title VII. Because these and other examples from Chaplin's position statement gave fair notice of his Title

4

VII grievances, the Court must **DENY** summary judgment on Chaplin's claims for retaliation and hostile work environment.

### 2. Chaplin's ADEA claim grew from the EEOC charge.

In a similar vein, HCL says Chaplin's ADEA claim is "newly asserted" and thus "barred as a matter of law." *See* ECF No. 12 at 15. Once more, HCL's position relies on a myopic analysis of Chaplin's initial charge alone. But HCL's position is even more attenuated here, as Chaplin's initial charge stated: "I believe that I was discriminated against because of my age (52), in violation of the [ADEA]." *See* ECF No. 13-1 at 2. While Chaplin may not have explained the contours of his ADEA grievance in the small, boilerplate box provided in the initial charge, his position statement is rife with references to payment issues allegedly connected to his "constant age discrimination." ECF No. 17 at 61. More than once, the statement discusses compensation issues related to HCL's alleged "ageism." *See id.* at 62. Such statements gave fair notice that Chaplin's ADEA claims implicated his pay. Thus, as with Chaplin's Title VII claims, the Court must **DENY** summary judgment on Chaplin's pay-based ADEA claim.

### B. Summary judgment is proper for Chaplin's ADA discrimination claim.

Having addressed Chaplin's Title VII and ADEA claims, the Court next turns to Chaplin's ADA claim. The ADA prohibits discrimination in the "terms, conditions, and privileges of employment" for disabled persons in the American workforce. 42 U.S.C. § 12112. Relevant here, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b).

At summary judgment, the Court analyzes failure-to-accommodate claims via three steps, with the burden of proof shifting after each. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). First, Chaplin must establish a prima facie claim by showing "(1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by [HCL]; and (3) [HCL] failed to

make reasonable accommodations for such known limitations." *Amedee v. Shell Chem., LP*, 953 F.3d 831, 837 (5th Cir. 2020) (cleaned up). If he does, the burden shifts to HCL to "articulate a legitimate, non-discriminatory reason" for the failure to accommodate. *Cannon v. Jacobs Field Servs., N.A., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). If they do, the burden shifts back to Chaplin to demonstrate HCL's explanation is pretextual. *Gosby v. Apache Indus. Sevs., Inc.*, 30 F.4th 523, 526 (5th Cir. 2022). As explained below, however, the Court need not progress through the entire *McDonnell Douglas* analysis because the summary judgment record fails to support a prima facie claim for failure-to-accommodate.

It's undisputed that Chaplin's "long-standing documented disability of essential tremor and post-traumatic stress disorder" render him a "qualified individual with a disability." *See* ECF No. 16 at 10; *see also Amedee*, 953 F.3d at 837. Chaplin thus satisfies the first element of his prima facie claim. It's also undisputed that HCL knew of Chaplin's disabilities, satisfying the second. *See, e.g.*, ECF No. 12 at 17. Things fall apart for Chaplin after that. To establish his claim, Chaplin must show HCL failed to provide reasonable accommodations for his disabilities. *See Amedee*, 953 F.3d at 837. That's where the Court's fact-finding functionality kicks in.

Chaplin's claims are supported by an affidavit detailing HCL's alleged violations of Title VII, the ADA, and the ADEA. *See* ECF No. 17 at 4–10. An interested party's affidavit can support a genuine factual dispute. *See Dall./Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 & n.14 (5th Cir. 2016) ("[S]elf-serving affidavits . . . may create fact issues even if not supported by the rest of the record. Where self-interested affidavits are otherwise competent evidence, they may not be discounted just because they happen to be self-interested.") "Indeed, 'evidence proffered by one side to . . . defeat a motion for summary judgment will inevitably appear 'self-serving.'" *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (quoting *INet Airport Sys.*, 819 F.3d at 253). But "without more, a vague or conclusory affidavit is insufficient to create a genuine issue of material fact *in the*

6

*face of conflicting probative evidence." Kariuiki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) (emphasis added).

Out of the horse's mouth, HCL counters Chaplin's affidavit with evidence indicating HCL provided accommodations when Chaplin requested them. *See* ECF No. 13-2 at 54–56, 60, 62, 66, 68–69. And Chaplin told his HCL superiors his resignation had "nothing to do with [them]." *Id.* at 74–75. All else equal, the Court must determine if Chaplin's self-serving affidavit—without other competent summary judgment evidence—beats HCL's evidence of accommodation.

While Chaplin's affidavit clearly details alleged ADEA/Title VII violations, *see* ECF No. 17 at 5–9, the affidavit discusses HCL's failure to accommodate with less granularity. The affidavit contains paragraph after paragraph that, if believed by a jury, give rise to robust claims under Title VII and the ADEA. *See id.* The same can't be said for HCL's alleged failure to accommodate. In fact, the entire affidavit contains two paragraphs implicating HCL's response to Chaplin's disability at all— and in a largely vague, conclusory manner. *See* ECF No. 17 at ¶¶ 22 ("[HCL Supervisor] Kayson told me he couldn't accommodate the request and HCL didn't have to accommodate any request for accommodation. Again, Kayson never put anything into writing. Any adverse action I received from Kayson was always verbal."); 24 ("I was also retaliated against for my disability because Kayson told me that my work was suffering yet I was not able to take tickets out of the bucket which mean[t] that I had a lower ticket volume.").

Chaplin acknowledges he has a tough field to plow, as the affidavit notes "[HCL] never put anything into writing. Any adverse action I received from [HCL] was always verbal." *Id.* at 9. But a verbal adverse action is an adverse action nonetheless, and the Court must view evidence in the light most favorable to Chaplin. *See Cunningham*, 64 F.4th at 600. Had HCL not furnished probative evidence of accommodations—and probative evidence that Chaplin acknowledged such accommodations—Chaplin's affidavit may have defeated summary judgment. The Court is not unsympathetic to Chaplin's argument that HCL "was crafty in [its] efforts to keep communications in writing pleasant and seemingly accommodating." ECF No. 16 at 15. It doesn't

7

strain credulity to imagine HCL supervisors saying one thing in writing while doing another thing in person. But to defeat HCL's "pleasant and seemingly accommodating" communications, a reasonable juror would require more evidence than Chaplin's word alone. Additional evidence could be affidavits from coworkers, one-off chats or email exchanges showing denied accommodations, or a wide array of other evidence. The record before the Court contains nothing of the sort.

HCL further emphasizes Chaplin's resigning words that it was "a pleasure" working with his HCL supervisors. *See* ECF No. 12 at 17. The Court finds this argument unpersuasive. Chaplin may well have lied to his supervisors to avoid complicating the relational dynamic at his resignation (and he wouldn't be the first employee to do so). And the conversational nicety that it was "a pleasure" working with certain supervisors is a far cry from affirmative evidence that those supervisors accommodated the employee's disability. But Chaplin went further, telling HCL his resignation had "nothing to do with [his supervisors]." *See* ECF No. 13-2 at 74–75. Sure, he could've been lying when he said that, too. But those statements start to add up, and they represent what lawyers call a "bad fact" for Chaplin. Bad facts can be overcome by showing other probative evidence to contravene them. But Chaplin doesn't provide any.

At the end of the day, HCL furnished chat messages that indicate HCL accommodated Chaplin's disability. *See id.* at 54–56, 60, 62, 66, 68–69. On top of that, Chaplin told HCL it was "a pleasure" working under his supervisors and affirmatively represented that his resignation had "nothing to do with [them]." *See id.* at 74–75. With no evidence beyond vague, conclusory allegations in his affidavit, Chaplin now asks the Court to overlook HCL's evidence and assume he was lying when he said his resignation had "nothing to do with" anything his HCL supervisors did. Based on the available evidence, a reasonable juror couldn't reach that conclusion—so the Court can't either. Even viewed in the light "most favorable" to Chaplin, *see Cunningham*, 64 F.4th at 600, the summary judgment record isn't enough to defeat HCL's motion. Accordingly, the Court must **GRANT** summary judgment on Chaplin's ADA claim.

## CONCLUSION

For the above reasons, the Court finds HCL's Motion (ECF No. 11) should be **GRANTED in part** and **DENIED in part**. Thus, Chaplin's ADA claim is **DISMISSED with prejudice**, while his Title VII and ADEA claims live on.

**SO ORDERED** on this **12th day** of **December 2023.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

9